UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| SAMANTHA D. (ROWELL) COMMINS, | ) | |
| Individually and as Next Friend, | ) | |
| Natural Parent and Legal Guardian of | ) | |
| N.C. and E.C., Minor Children, and as | ) | |
| Personal Representative and Ancillary | ) | |
| Administratrix of the Estate of | ) | |
| SAMUEL JACK COMMINS, Deceased, | ) | |
| Plaintiffs, | ) | |
| and | ) | Case No. 3:16-cv-00608-GNS |
| | ) | |
| ACE AMERICAN INSURANCE COMPANY, | ) | |
| Intervenor Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| NES RENTALS HOLDINGS, INC., | ) | |
| NES EQUIPMENT SERVICES | ) | |
| CORPORATION d/b/a NES RENTALS, and | ) | |
| GENIE INDUSTRIES, INC., | ) | |
| Defendants. | ) | |

## Plaintiffs' Motion to Compel Discovery from NES and Genie

Plaintiffs have separate discovery disputes with NES and Genie that require Court intervention.

With respect to NES, the Court should order NES to: (1) disclose potential document custodians, (2) agree to reasonable search terms, (3) conduct searches on the electronic files of its potential document custodians, (4) supplement its answers to interrogatory answers 2, 3, 4 and 6, (4) present a Rule 30(b)(6) witness in aid of discovery so Plaintiffs can test whether, in fact, NES only has thirteen documents (exclusive of photographs) responsive to Plaintiffs' 25 different categories of documents requested for production – without prejudice to Plaintiffs' ability to notice a later Rule 30(b)(6) topic on substantive topics of NES; and (5) produce all document responsive to Plaintiffs' document requests 17, 18, 19, and 25.

1

With respect to Genie, the discovery issue the parties need the Court to resolve is narrow (in large part because Genie has worked with Plaintiffs to narrow disputes): Plaintiffs and Genie have reached an impasse over whether Genie must produce at this time documents relating to cost, revenue and expenses for two safety devices Genie had available for the particular Genie model of boom lift that the decedent was operating at the time he was crushed to death by an overhead obstruction.  The Court should order Genie to produce those documents.

## I.   NES's Inadequate Document Production and IROG Responses

On September 29, 2017, Plaintiffs served their first request for production on NES seeking, among other things, documents about several key issues in this case: what NES knew about the risk that operators of boom lifts would be injured or killed by overhead obstructions, what its personnel said about it, and what they did about it.  To date, NES has produced a total of only thirteen documents (exclusive of photographs).

Given the lack of documents, Plaintiffs repeatedly have asked NES to meet and confer regarding potential document custodians and search terms to be used to locate responsive NES documents.  Specifically, Plaintiffs raised these issues with NES by email dated December 11, 2017, on a phone call the following week, by letter dated January 9, 2018, on a meet and confer on January 10, 2018 by email dated January 12, by letter dated February 13, and by email dated February 16.  These results have been fruitless.

Plaintiffs therefore seek the Court's assistance in ordering NES to disclose potential document custodians, agree to reasonable search terms, conduct searches on the electronic files of its potential document custodians, and then present a Rule 30(b)(6) witness in aid of discovery so Plaintiffs can test whether, in fact, NES only has thirteen documents responsive to Plaintiffs' 25 different categories of documents requested for production.

2

A.    NES's Awareness of the Risk Posed to Boom Lift Operators by Overhead Obstructions

Since at least 2010, the boom lift industry has been well aware of and actively discussing the risk to operators posed by overhead obstructions.  This is not surprising given that OSHA records reveal more than 50 such apparent incidents had occurred before the one that killed Mr. Commins.  Some of these incidents include Genie lifts.  Others include NES rentals.  The problem had become so acute that, by the time of Mr. Commins' death, all or nearly all manufacturers (including Genie) had developed safety devices to guard against such accidents, although none were included on the lift Mr. Commins was operating when he was crushed against an overhead obstruction.

For example, a member-owned trade group of lift manufacturers, rental companies, and users called the International Powered Access Federation ("IPAF") frequently wrote about the risks posed by overhead obstructions.  Genie has produced multiple documents bearing IPAF's name that give guidance about potential safety devices to protect operators from such crushing incidents and advice about training operators on the subject.  Examples are attached as Exhibits A, B, and C to the Declaration of Cory Buland.  These documents identify the precise risk of injury that Mr. Commins suffered and some describe specific safety devices that would have saved his life.

B.    NES's Failure to Produce – or Meet and Confer about – Custodians and Search Terms

NES has claimed it simply does not have more responsive documents other than the thirteen it has produced because, according to NES, it only rents boom lifts.  Plaintiffs have good reason to believe that NES has substantial internal and external communications about the risk posed to boom lift operators by overhead obstructions and has simply not looked for them.  To take just one example, the CEO of NES (Andrew Studdert) served as the worldwide president of

IPAF at the time of Mr. Commins' death, and IPAF's North American chairperson was NES's

Director of Safety (Teresa Kee).  Moreover, NES has publicly held itself out as a leader in the

field of training operators to use boom lifts safely, including its manager of Safety Education,

Tony Radke, who was the chairperson of IPAF's North American Training Committee.  *See*

Buland Decl. Exhibit D.  Yet, somehow, NES did not produce the IPAF documents on this very

topic that Genie did.  It strains credulity for NES to say it has no reports, emails, text messages,

or notes relating to this important safety issue regarding boom lifts when its own key executives

were in charge of the leading industry association that was investigating the issue.  In fact, NES

has not produced a single document recognizing the existence of safety devices like Genie's OPS

or OPA or any of the number of other similar devices offered by major lift manufacturers.

When NES produced only thirteen documents, which were received on December 6,

2017, Plaintiffs immediately began inquiring what NES had done to locate responsive

documents, including search terms and custodians.  This approach is appropriate, particularly in

light of NES's anemic production, as Judge Brennenstuhl recently wrote in another case:

> When two-way planning does not occur upfront, and questions about the
> adequacy of the document production subsequently arise, common sense dictates
> that the party conducting the search must share information regarding the universe
> of potentially relevant documents being preserved, and those that no longer exist,
> as well as the search terms used in collecting relevant documents and the
> identities of the custodians from whom the documents were retrieved.  After all,
> the party responsible for the search and production has the duty to demonstrate its
> reasonableness.

*ProCom Heating, Inc. v. GHP Grp., Inc.*, No. 1:13-CV-00163-GNS, 2016 WL 8203221, at *3

(W.D. Ky. July 8, 2016) (emphasis added) (quoting *Burd v. Ford Motor Co.*, No. 3:13-cv-20976,

*33 (S.D.W. Va. July 8, 2015)); *accord Ruiz-Bueno v. Scott*, 2013 WL 6055402, at *4 (S.D.

Ohio Nov. 15, 2013) ("What should have occurred here is that either as part of the Rule 26(f)

planning process, or once it became apparent that a dispute was brewing over ESI, counsel

4

should have engaged in a collaborative effort to solve the problem. That effort would require defendants' counsel to state explicitly how the search was constructed or organized."). Even if NES did not have an initial obligation to disclose its search custodians, it's obviously deficient production of 13 documents clearly requires NES to explain what it did to find them.

On December 11, 2017 Plaintiffs asked NES to discuss these issues that week but NES was not available to meet and confer until January 10, 2018. When that meet and confer finally occurred, not only was NES unprepared to discuss custodians and search terms, but its counsel was not aware how the thirteen documents had been collected by NES. After further back and forth, NES finally produced its search terms on January 29, 2018. They are attached as Exhibit E to the Buland Declaration, and are not a reasonable effort to capture responsive documents ("Genie", "S-85", "S85", "overheard obstruction", "KBR", and "speed switch" and "Samuel Commins").

Plaintiffs' counsel Cory Buland was in trial the next week, but by letter dated February 13, 2018, Plaintiffs repeated their demand to discuss custodians and asked NES to run a narrowly tailored list of search terms beyond the 7 that NES proposed. *See* Buland Decl. Ex. F.

Plaintiffs indicated that they would raise the issue on the February 15, 2018 call with the Court, before it was adjourned. Plaintiffs sent a further email on February 16 asking NES to respond to the February 13 letter in light of the adjourned conference. Both letters were ignored by NES, which still has not identified a single custodian whose records could be relevant or whose records have been searched.

NES's efforts to avoid disclosing the names of potential witnesses extend beyond document productions. Two of Plaintiffs' outstanding interrogatories seek to identify potential NES witnesses involved with ensuring NES equipment is safe and determining whether it should

be retrofitted with new safety devices.  *See* Buland Decl. Exhibit G (Interrogatories 2 and 6). NES's responses to these questions do not provide a single name; instead NES objects on numerous grounds, including the baseless objection that the interrogatory is improper because it asks about boom lifts generally and not just the specific machine involved in Mr. Commins' accident.  *Id.*  NES likewise refused to disclose what it knows about similar incidents involving other boom lift models, relying on the same baseless objection (Interrogatories 3 and 4). Plaintiffs raised these issues with NES in their February 13 and 16 letters, which have not been answered.

Plaintiffs seek an order directing NES to (1) immediately identify by letter all potential custodians with potentially responsive documents, including those involved with IPAF or any boom lift safety efforts and to meet and confer with Plaintiffs regarding the custodians whose records will be searched; (2) apply the search terms proposed by Plaintiffs; and (3) supplement its interrogatory responses.

Plaintiffs also seek an order authorizing them to take an early Rule 30(b)(6) witness to answer basic questions about NES records, custodians, and document retention without prejudice to Plaintiffs' ability to notice a later Rule 30(b)(6) topic on substantive topics of NES.  A leading treatise has recognized the utility of this approach to enable more efficient discovery later.  *See* 8A WRIGHT & MILLER § 2103 (3d ed. updated April 2017) ("[T]here may be much reason for use of a Rule 30(b)(6) deposition early in many cases to obtain information on the electronic information systems employed by the corporation before launching broad–gauged discovery of electronically stored information. Indeed, the 2006 amendments to Rule 26(f) calling for discussion of this form of discovery would seem to encourage such inquiry.")

6

C.      Other Documents Plaintiffs Requested but NES Has Not Produced

There are other categories of documents that Plaintiffs have requested for which NES did not indicate, as required by Rule 34(b)(2)(C), that it would withhold responsive material, but simply has not produced any.  For example, Plaintiffs asked for the following in September 2017 but not a single responsive NES document has been produced to date other than those noted in parenthesis:

- NES corporate policies, practices, procedures relating to safety (other than the safety checklist used when equipment is rented) (RFP 17);

- NES corporate policies, practices, procedures, manuals, and instructions relating to accident investigation involving NES equipment (RFP 18);

- NES training materials for employees responsible for leasing and maintaining equipment and boom lifts (RFP 19); and

- NES's document retention policy (RFP 25).

Surely documents responsive to these requests exist.  The Court should order NES to look for and produce these documents.

II.      Plaintiffs' Discovery Dispute with Genie

Counsel for Genie and Counsel for Plaintiffs have worked together to narrow their disagreements that require court intervention at this time.  The only one remaining at present is over Plaintiffs' request for production request 20, which seeks documents sufficient to show the cost incurred by Genie to develop and produce two safety devices designed to avoid the type of injuries that killed Mr. Commins, and to show Genie's revenue and profit from their sales.  As the Court is aware, Genie developed these safety devices but only made them available at an additional cost and did not attempt to retrofit them on existing machines.

Genie's objection to the request only states as follows: "Genie objects to this Request on the grounds that it is overly broad and seeks information that is irrelevant, confidential,

commercially sensitive, and not proportional to the needs of this case." This information is not only relevant to the economic feasibility of safer alternative designs, but Genie has also admitted in its March 19, 2018 letter to the Court that the information is relevant to a live claim—punitive damages. Instead, it now argues that it *will be* irrelevant if its motion for summary judgment is successful. That is not a proper basis for Genie to withhold relevant, responsive documents.

Genie's argument about being able to defer discovery until having an opportunity to move for summary judgment has no support under the Federal Rules of Civil Procedure and is against the weight of authority. *See, e.g.*, Rule 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . .").

Just last December Judge King examined the issue and concluded that, while some courts have required such a showing, it is not the "the majority view" and declined to follow it:

> The majority of federal courts to have considered the question, however, have concluded that a plaintiff seeking punitive damages is entitled to discover information relating to the defendant's financial condition in advance of trial and without making a prima facie showing that he is entitled to recover such damages.

*Corizon Health, Inc. v. CorrecTek, Inc.*, 2017 WL 7693390, at *3 (W.D. Ky. Dec. 12, 2017).

Other courts have reached the same conclusion:

- *Massey Coal Servs., Inc. v. Victaulic Co. of Am.*, No. 2:06-CV-00535, 2008 WL 11378911, at *2 (S.D.W. Va. Sept. 5, 2008) ("Pretrial discovery of financial information relevant to a punitive damages claim is generally permissible without any prima facie showing of entitlement to such damages." (quoting earlier Order in case));

- *Westbrook v. Charlie Sciara & Son Produce Co., Inc.*, 2008 WL 839745, at * 2 ("The majority of courts have held that a plaintiff seeking punitive damages is entitled to discover information relating to the defendant's financial condition in advance of trial and without making a prima facie showing that he is entitled to recover such damages.");

- *United States v. Matusoff Rental Co.*, 204 F.R.D. 396, 399 (S.D. Ohio 2001) ("The overwhelming majority of federal courts to have considered the question have concluded that a plaintiff seeking punitive damages is entitled to discover information relating to the

defendant's financial condition in advance of trial and without making a prima facie showing that he is entitled to recover such damages.");

- *Christy v. Ashkin*, 972 F.Supp. 253 (D. Vt. 1997) ("[T]he vast majority of federal district courts which have addressed the discoverability of financial information before a claim for punitive damages has been clearly established have held that such information is discoverable").

The Court should join these others courts in rejecting Genie's attempt to avoid producing these documents.

Genie's other objections stated in its March 19 letter are that the information is "confidential, commercially sensitive, and not proportional to the needs of this case." As to "confidential and commercially sensitive," the parties already are exchanging confidential information, including sensitive financial and health information about Mr. Commins' and his family, and the parties also have entered into a stipulation to protect such material form disclosure. As to proportionality, the request does not ask for "all documents," but rather is narrowly targeted to "information sufficient to show" the cost to develop the devices, the cost to manufacture them, the sale price, and the revenue of and profit associated with them, all of which are are directly relevant to this case. These requests are targeted, tailored, and proportional.

Moreover, Genie's argument puts the cart before the horse. The information Plaintiffs seek is not just relevant to the <u>amount</u> of punitive damages, but relevant both to liability and Plaintiffs' <u>entitlement</u> to punitive damages. As to liability, Kentucky law recognizes the relevance of "a feasible alternative design" to product liability cases. *See Toyota Motor Corp. v. Gregory*, 136 S.W.3d 35, 42 (Ky. 2004). As other authorities have recognized, cost is a relevant factor in evaluating feasible alternative designs. *See, e.g.*, RESTATEMENT (THIRD) OF TORTS: PROD. LIAB. § 2 cmt. d ("[S]pecifically, the test is whether a reasonable alternative design would,

9

at reasonable cost, have reduced the foreseeable risks of harm posed by the product and, if so, whether the omission of the alternative design by the seller or a predecessor in the distributive chain rendered the product not reasonably safe.").

The information Plaintiffs seek is also relevant to Plaintiffs' <u>entitlement</u> to punitive damages.  Under Kentucky law:

> It is well established that punitive damages may be appropriate in a products liability action, notwithstanding that such actions initially focus on the state of the product rather than on the defendant's culpability. The plaintiff must prove, in addition to an injury-causing product defect, that something about the defendant's conduct was outrageous, was at least grossly negligent, and amounted to reckless indifference.

*Sufix, U.S.A., Inc. v. Cook*, 128 S.W.3d 838, at *840-41 (Ky. App. 2004).

Even without the benefit of much of the discovery they have asked for, Plaintiffs know that Genie was aware of the risk of deaths like Mr. Commins years before it happened, that it developed safety devices to guard against that specific risk, but made the conscious decision to only sell that protection at a price.  The cost-benefit analysis Genie undertook is certainly relevant to the availability of punitive damages and a jury's determination of whether its conduct was "outrageous" or "recklessly indifferent."

Finally, under the scheduling order, summary judgment will take place after fact discovery is closed.  The scheduling order has no provision permitting bifurcated discovery. Plaintiffs would need to depose witnesses about the costs and revenue associated with the OPS and OPA and how they relate to Genie's decision to neither make the safety features mandatory nor retrofit them on existing units.  Genie is in effect now seeking to change the scheduling order it agreed to, and somehow squeeze a second phase of fact discovery in after summary judgment.

\* \* \*

10

The parties are already five months (halfway) through fact discovery but NES has produced only thirteen documents that are not photographs.  Absent an order from the Court, Plaintiffs fear NES will continue to drag its feet and Genie will refuse to produce relevant evidence until the eve of trial.

Respectfully Submitted,

DOLT, THOMPSON, SHEPHERD & CONWAY, PSC

By:     /s/ Tyler S. Thompson
        Tyler S. Thompson
        Kentucky Bar Number: 81736
        13800 Lake Point Circle
        Louisville, KY 40223
        Telephone: (502) 244-7772
        Fax: (502) 244-7776
        TThompson@kytrial.com

        SUSMAN GODFREY L.L.P.

By:     /s/ Vineet Bhatia
        Vineet Bhatia (admitted *Pro Hac Vice*)
        Texas Bar Number: 00795976
        Shawn L. Raymond (admitted *Pro Hac Vice*)
        Texas Bar Number: 24009236
        1000 Louisiana Street, Suite 5100
        Houston, Texas 77002-5096
        Telephone: (713) 651-9366
        Fax: (713) 654-6666
        vbhatia@susmangodfrey.com
        sraymond@susmangodfrey.com

        Cory Buland (admitted *Pro Hac Vice*)
        New York Bar Number: 4842654
        1301 Avenue of the Americas, 32nd Floor
        New York, NY 10019
        Telephone: (212) 336-8330
        Fax: (212) 336-8340
        cbuland@susmangodfrey.com

        THE SHER LAW FIRM PLLC

11

By:      */s/ Andrew Sher*
         Andrew Sher (admitted *Pro Hac Vice*)
         Texas Bar Number: 00789623
         3131 Eastside St., Suite 440
         Houston, Texas 77098
         Telephone: (713) 626-2100
         Fax: (713) 626-2101
         andrew@sher-law.com

         **ATTORNEYS FOR PLAINTIFFS**

## **CERTIFICATE OF COMPLIANCE**

Counsel for Plaintiffs have attempted to meet and confer and resolve the outstanding issues set forth above.

With respect to NES, on December 11, 2017, Plaintiffs asked NES to meet and confer and be prepared to discuss search terms and custodians that week.  NES was not available to meet and confer until January 10, 2018. On January 9, 2018, Plaintiffs sent a letter again asking NES to be prepared to discuss search terms and potential custodians.  When the meet and confer occurred, not only was NES unprepared to discuss custodians and search terms, but its counsel was not aware how the thirteen documents had been collected by NES.   Plaintiffs sent a letter to NES on January 12, 2018 reiterating their demand for NES's searched custodians, potential custodians, and search terms.   Counsel for NES responded that he did "not anticipate an issue with disclosing the search."  On January 29, 2018, NES finally provided the seven search terms it had applied but no information about which custodians it had searched.  Plaintiffs' counsel, Cory Buland, was preparing for and in trial the following week in the United States District Court for the Northern District of California, but replied on February 13, 2018 and repeated Plaintiffs' demand for NES's custodians and asked that NES apply appropriate search terms to its ESI. Plaintiffs indicated that they would raise the issue on the February 15, 2018 call with the Court, before it was adjourned.  Plaintiffs sent a further email on February 16 asking NES to respond to the February 13 letter in light of the adjourned conference.  Plaintiffs have received no response to either letter from NES.

With respect to Genie, Plaintiffs raised the issue with Genie in a January 30, 2018 letter. During a meet and confer on February 15, 2018, the parties agreed they were at an impasse on the issue of Plaintiffs' request for production 20.

_/s/ Cory Buland_____
Cory Buland

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing has been served upon the

following by ECF, on this 21st day of March, 2018:

Marc A. Lovell
Amanda M. Sowell
HARLIN PARKER
519 East 10th Street
P.O. Box 390
Bowling Green, Kentucky 42101-0390
*Counsel for Defendants,*
*NES Rentals Holdings, Inc. and*
*NES Equipment Services Corporation d/b/a*
*NES Rentals*

Christopher R. Cashen
Christopher L. Jackson
DINSMORE & SHOHL LLP
250 W. Main Street, Suite 1400
Lexington, KY 40507
(859) 425-1000
chris.cashen@dinsmore.com
christopher.jackson@dinsmore.com
*Counsel for Defendant,*
*Genie Industries, Inc.*

Laura R. Beasley
U'SELLIS MAYER & ASSOCIATES PSC
600 East Main Street, Suite 100
Louisville, KY 40202
(502) 736-3600
lbeasley@umakylaw.com
*Counsel for Intervenor Plaintiff,*
*ACE American Insurance Company*

*/s/ Vineet Bhatia*
Vineet Bhatia