# EXHIBIT H

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| SAMANTHA D. (ROWELL) COMMINS, Individually and as Next Friend, Natural Parent and Legal Guardian of N.C. and E.C., Minor Children, and as Personal Representative and Ancillary Administratrix of the Estate of SAMUEL JACK COMMINS, Deceased, | ) | |
| Plaintiffs, | ) | Case No. 3:16-cv-00608-GNS |
| vs. | ) | |
| NES RENTALS HOLDINGS, INC., NES EQUIPMENT SERVICES CORPORATION d/b/a NES RENTALS and GENIE INDUSTRIES, INC., | ) | **PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** |
| Defendants. | ) | |

The Defendants NES Rentals Holdings, Inc. and NES Equipment Services Corporation d/b/a/ NES Rentals ("NES") are required to answer the following Request for Production of Documents within thirty (30) days.

## DEFINITIONS AND INSTRUCTIONS

1. "You", "Your", and "NES" shall refer to Defendants NES Rentals Holdings, Inc. and NES Equipment Services Corporation d/b/a/ NES Rentals and all of their brands, agents, representatives, servants, employees, executives, directors, subsidiaries, parents, affiliates, divisions, predecessors, successors, and all entities and/or individuals under its control or in which it has an interest, individually or collectively.

2. "Action" means the above-captioned action currently pending in the United States District Court for the Western District of Kentucky, captioned *Commins v. NES Rental Holdings, Inc. et al*., Case No. 3:16-cv-00608-GNS.

3. "Genie S-85" means the "S" family of Genie boom lifts including the S-80, S-80X, S-85, and substantially similar models.

4. “Operator Protective Structure” or “OPS” means Genie’s optional device for installation on an S or Z boom lift that provides secondary protection for operators in the event of contact with an overhead obstacle or any similar product designed by Genie whether brought to market or not.

5. “Operator Protective Alarm” or “OPA” means the Genie optional device designed to alert ground personnel when an operator makes contact with the platform control panel by interrupting boom movement and sounding an alarm or any similar device designed by Genie whether brought to market or not including, but not limited to, the Lift Guard Contact Alarm.

6. “Joystick” means the device on the operator control panel of a Genie boom lift that controls the raising and lowering of the boom arm, platform, or basket.

7. “Document” means any paper, agreement, note, book, photograph, x-ray, reproduction, pamphlet, brochure, manual, periodical, letter, report, memorandum, summary, notation, statement, draft, message, telegram, telex, wire, cable, record, log book, study, working paper, map, survey, drawing, blueprint, sketch, model, chart, schedule, graph, index, tape, minutes, minute book, contract, lease, invoice, purchase order, ledger, check, check stub, estimate, record of purchase or sale, correspondence, correspondence files, desk calendar, work paper, business form, appointment book, time sheet, business form, printout, information kept on a computer, computer disk, or in digital or computerized form, computer tape, computer printout, computer program, computer disc, or index thereto, pleading, transcription or taping of telephone or personal conversation or conference, including intercompany, intracompany, interoffice, and intra office memorandum or other document regarding any conference, conversation, or other communication, and any and all other written, printed, typed, taped, recorded, transcribed, punched, filmed, or graphic matter, however produced or reproduced.

8. “Person” shall mean an individual, firm, partnership, corporation, proprietorship, committee, or any other organization or entity, and its, his or her respective agents, representatives, servants, employees, executives, directors, subsidiaries, parents, affiliates, predecessors, successors, and all entities and/or individuals under their control or in which they have an interest.

9. A document that “refers,” “relates,” or “pertains” to, or “records” or “reflects” a subject matter means any document that constitutes, contains, embodies, responds to, describes, refers to, analyzes, or is otherwise pertinent to the subject matter, including, without limitation, documents from which each such document is derived.

10. “Including” shall mean including but not limited to.

11. “And” shall mean and/or.

12. These requests are intended to encompass the original and all non-duplicate copies (those that differ from the original in some respect, for example, by reason of notations made on the copy) of all documents of any nature which are now or have at any time been within your care, custody or control.

13. All other words used herein shall have their common meaning as used in the Federal Rules of Civil Procedure, relevant law, and the English Language.

14. All information and documents are to be identified or produced that are not privileged and that are in your possession, custody, or control. Where information in your possession, custody or control is requested (which is the case with all requests), such request includes information possessed by your present or former affiliates, attorneys, agents, subordinates, employees, representatives, consultants, contractors, successors, predecessors, subsidiaries, parents, and vendors.

15. These requests are continuing in nature and require supplemental answers in accordance with the Federal Rules of Civil Procedure.

16. If, in whole or in part, you object to, refuse to answer, or refuse to produce documents in response to any Request on the ground that the answer, information, or document falls within the scope of any privilege or exemption, please produce a privilege log that, for each instance in which you withhold information or documents, states the basis for the objection and provides the information required by Rule 26(b)(5).

17. Unless otherwise specified, the time period for these requests for production shall be from September 1, 2005 to September 1, 2016.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1:** All communications internally or with any third party, including, but not limited to, any engineer, engineering firm, expert, consultant, or scientist, designer, manufacturing company, regulatory organization, government, or quasi-governmental body, regarding the safety of boom lifts or aerial work platforms as it relates to risks posed by overhead obstacles or obstructions, incidents related to such risks and injuries, or methods of mitigating such risks or preventing such injuries, and all documents related to such communications.

**RESPONSE:**

**REQUEST NO. 2:** All documents relating to NES's rules, guidelines, policies, and or procedures for:

i. Monitoring, noting, recording, or tracking complaints, incidents and claims reported to anyone, including, but not limited, to NES personnel

and representatives, for personal injuries or other incidents allegedly caused by products leased, rented, sold, or otherwise supplied by NES;

ii. Monitoring injury data involving use of boom lifts or aerial work platforms; and

iii. Documents showing or identifying the custodian of all such documents referenced in this request for production.

**RESPONSE:**

**REQUEST NO. 3:** Please produce:

i. Documents sufficient to show all categories of data tracked within any and all databases containing consumer complaint information and the information contained in such databases regarding boom lifts or aerial work platforms, the custodian of such data, and the location of such data; and

ii. NES's data on product liability claims and/or potential product liability claims for boom lifts and aerial work platforms and how, where and by whom such information is referred to, kept and/or processed.

**RESPONSE:**

**REQUEST NO. 4**: Please produce any documents that are or relate to complaints from any person or entity relating to injuries/damages alleged to have resulted from any incident involving a boom lift or aerial work platform leased, rented, sold, or otherwise supplied by NES involving an injury caused by an overhead obstacle or obstruction, in the form of:

i. Formal complaints by lawsuit;

ii. Informal complaints by letter or any oral or written communication by any individual or entity;

iii. Customer requested refunds, replacements, or repairs;

iv. Letter of complaint by governmental agencies;

v. Inquiries by governmental agencies; and

vi. Reports/lists of potential safety problems.

**RESPONSE:**

**REQUEST NO. 5:** All reports either prepared by NES or on its behalf or provided to NES relating to the risks posed by overhead obstacles or obstructions to the operators of boom lifts or aerial work platforms and all communications related to such reports.

**RESPONSE:**

**REQUEST NO. 6:** Please produce all designated expert reports, and any consulting expert reports that were reviewed by any designated testifying expert (i.e., both Plaintiff and Defense Experts) in any litigation involving NES arising out of the operation of a boom lift or aerial work platform and involving injuries resulting from overhead obstacles obstructions.

**RESPONSE:**

**REQUEST NO. 7:** Please produce the complete file of any testifying expert or any consulting expert whose file has been reviewed by any testifying expert, in any litigation involving NES arising out of the operation of a boom lift or aerial work platform and involving injuries from overhead obstacles or obstructions:

i. Any exhibits;

ii. Any written report;

iii. The mental impressions and opinions held by the expert; and

iv. All the facts known to the expert, regardless of when acquired that relate to or form the basis of the mental impressions and opinions of the expert.

**RESPONSE:**

**REQUEST NO. 8:** For any litigation involving NES arising out of the operation of a Genie boom lift or aerial work platform and involving injuries from overhead obstacles or obstructions, produce all deposition transcripts (including exhibits and errata sheets) taken of:

i. All employees or representatives of NES or the lift manufacturer who testified about the design or maintenance of the boom lift or aerial work platform;

ii. All expert witnesses designated by NES or the lift manufacturer concerning the cause of the accident, including any potential design and maintenance defects; and

iii. All expert witnesses designated by the Plaintiff(s) concerning the cause of the accident including any potential design and maintenance defects.

**RESPONSE:**

**REQUEST NO. 9:** All communications, whether internally or with third parties, including, but not limited to, competitors, industry groups, and government agencies, related to incidents where the operator of a boom lift or aerial work platform suffered injury and/or death involving an overhead obstacle or obstruction, or the risk of such incidents.

**RESPONSE:**

**REQUEST NO. 10:** All documents, including but not limited to studies, reports, news articles, governmental bulletins, and communications, concerning any incidents where the

operator of a boom lift or aerial work platform suffered injury and/or death involving an overhead obstacle or obstruction or the risk of such incidents.

**RESPONSE:**

**REQUEST NO. 11:** All documents related to any products or devices that can be attached to boom lifts or aerial work platforms that are intended to prevent injuries resulting from contact with overhead obstacles or obstructions, such as Genie's Operator Protective Structure or Genie's Operator Protective Alarm, including, but not limited to, all documents related to whether NES should include such products with equipment it leases, rents, sells, or otherwise provides.

**RESPONSE:**

**REQUEST NO. 12:** Please produce all documents which are or relate to communications, discussions, or negotiation concerning Genie's Operator Protective Structure or Genie's Operator Protective Alarm, or any secondary guarding on boom lifts for any manufacturers including, without limitations, the following subjects:

i. Necessity of secondary guarding for safety of boom lifts;

ii. Retrofitting boom lifts with any secondary guarding (at either parties' expense);

iii. Modifications to the Manual of Responsibilities for Customer with respect to disclosure of any secondary guarding;

iv. Familiarization requirements with respect to disclosure of any secondary guarding;

v. Cost-benefit analysis of any secondary guarding;

vi. Requirements or installation of any secondary guarding of boom lifts in Europe, UK, or Australia; and

vii. Whether new boom lifts will or should be delivered standardly equipped with any secondary guarding;

**RESPONSE:**

**REQUEST NO. 13**: All safety warnings and instructions, whether on-product or contained in a manual, regarding the Genie S-85. If any warning or instruction has been revised, please include every version of said warning and instruction.

**RESPONSE:**

**REQUEST NO. 14**: All warnings made by or on behalf of NES, whether in manuals, bulletins, equipment labels, or otherwise, for any boom lifts or aerial work platforms relating to the risk posed by overhead obstacles or obstructions.

**RESPONSE:**

**REQUEST NO. 15:** All documents which are or relate to pre-rental operational inspection, testing or verification procedures with respect to Genie boom lifts including without limitations all pre-operation checklist(s), and any testing, verification, or maintenance of the speed reduction limit switch that limits or reduces the operation speed of the Boom Lift when the boom or boom jib is in a raised position.

**RESPONSE:**

**REQUEST NO. 16:** Please produce all documents which are or relate to safety devices disclosed to customers in connection with renting or leasing a boom lift.

**RESPONSE:**

**REQUEST NO. 17:** All NES corporate policies, practices, procedures, manuals, instructions, guidelines, or requirements relating to safety for NES generally or boom lifts or aerial work platforms specifically.

**RESPONSE:**

**REQUEST NO. 18:** All NES corporate policies, practices, procedures, manuals, instructions, guidelines, or requirements related to the investigation of incidents involving injury accidents involving NES equipment.

**RESPONSE:**

**REQUEST NO. 19**. All training materials for NES employees responsible for leasing or maintaining equipment relating to either general maintenance and safety or for boom lifts and aerial work platforms specifically including, but not limited to, any protocols, checklists, rules, or guidelines about maintenance, inspection, or testing.

**RESPONSE:**

**REQUEST NO. 20:** All documents related to the need for or mechanism designed to limit the speed of boom lifts of aerial work platforms when the boom or lift is elevated and any documents related to maintaining, checking, setting, inspecting, repairing, or testing of the device or mechanism that does so including, but not limited, to:

i. All instructions, manuals, procedures, or specifications for testing or adjusting a boom lift's speed reduction limit switch or similar device;

ii. All documents regarding incidences or the risk of incidence caused by malfunctioning speed reduction limit switches or similar devices; and

iii. All communications related to (i) or (ii).

**RESPONSE:**

**REQUEST NO. 21**: All documents, including reports or photographs, related to the incident that is the subject matter of this litigation.

**RESPONSE:**

**REQUEST NO. 22:** Please produce any documents in your possession regarding the subject Genie S-85, S8510-8304, including, but not limited to, all records relating to the sale or servicing of the boom lift, all correspondence, bills, invoices, warranties, service calls/requests, complaints, user manuals, and instructions.

**RESPONSE:**

**REQUEST NO. 23:** All documentary evidence that may be offered by NES into evidence at trial.

**RESPONSE:**

**REQUEST NO. 24:** All documents you relied on in responding to Plaintiffs' interrogatories.

**RESPONSE:**

**REQUEST NO. 25:** All documents related to NES's document retention policy.

**RESPONSE:**

Dated: September 29, 2017

Respectfully Submitted,

DOLT, THOMPSON, SHEPHERD & CONWAY, PSC

By: */s/ Tyler S. Thompson*

Tyler S. Thompson
Kentucky Bar Number: 81736
13800 Lake Point Circle
Louisville, KY 40223
Telephone: (502) 244-7772
Fax: (502) 244-7776
TThompson@kytrial.com

SUSMAN GODFREY L.L.P.

By: */s/ Vineet Bhatia*
Vineet Bhatia (admitted *Pro Hac Vice*)
Texas Bar Number: 00795976
Shawn L. Raymond (admitted *Pro Hac Vice*)
Texas Bar Number: 24009236
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 651-9366
Fax: (713) 654-6666
vbhatia@susmangodfrey.com
sraymond@susmangodfrey.com

Cory Buland (admitted *Pro Hac Vice*)
New York Bar Number: 4842654
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330
Fax: (212) 336-8340
cbuland@susmangodfrey.com

THE SHER LAW FIRM PLLC

By: */s/ Andrew Sher*
Andrew Sher (admitted *Pro Hac Vice*)
Texas Bar Number: 00789623
3131 Eastside St., Suite 440
Houston, Texas 77098
Telephone: (713) 626-2100
Fax: (713) 626-2101
andrew@sher-law.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing has been served upon the following by first class mail, on this 29th day of September, 2017:

Donald Craig York
Nicholas M. Haering
DINSMORE & SHOHL LLP
101 S. Fifth Street, Suite 2500
Louisville, KY 40202
(502) 581-8037
craig.york@dinsmore.com
nicholas.haering@dinsmore.com
*Counsel for Defendants,*
*NES Rentals Holdings, Inc. and*
*NES Equipment Services Corporation d/b/a*
*NES Rentals*

Christopher R. Cashen
Christopher L. Jackson
DINSMORE & SHOHL LLP
250 W. Main Street, Suite 1400
Lexington, KY 40507
(859) 425-1000
chris.cashen@dinsmore.com
christopher.jackson@dinsmore.com
*Counsel for Defendant,*
*Genie Industries, Inc.*

*/s/ Cory Buland*
Cory Buland