**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:16CV-00608-GNS**

**SAMANTHA D. (ROWELL) COMMINS,**
**Individually and as Next Friend, Natural Parent**
**and Legal Guardian of N.C. and E.C., Minor**
**Children, and as Personal Representative and**
**Ancillary Administratrix of the Estate of Samuel**
**Jack Commins, Deceased.**                                    **PLAINTIFFS**

**VS.**

**NES RENTALS HOLDINGS, INC., et al.**                         **DEFENDANTS**

<u>MEMORANDUM OPINION</u>
<u>AND ORDER</u>

This is a wrongful death action brought on behalf of the estate of Samuel Jack Commins, who was fatally injured while operating a boom lift during the course of his employment with Kellogg, Brown, & Root Construction Company, against Defendant Genie Industries, the company that manufactured the boom lift, and NES Rentals Holdings, Inc., et al., the companies that leased the boom lift to Commins' employer on the job site. Plaintiff has presently filed a Motion to Compel, setting forth numerous discovery disputes with Defendant NES and a single discovery dispute with Defendant Genie (DN 84). Defendants NES (DN 87) and Genie (DN 86) have responded. Plaintiffs have replied to both Defendants. (DN 88; DN 90). This matter is ripe for adjudication.

<u>Background</u>

Late in the night on September 25, 2015, Samuel Jack Commins died while operating a Genie S-85 Boom Lift[1] that his employer, Kellogg, Brown, & Root LLC ("KBR"), had leased from NES Equipment Services Corporation about one year earlier. (DN 1, at ¶ 11).

The facts leading up to Commins' death are somewhat disputed by the parties. Plaintiffs allege that Commins and a co-worker were "tasked with using the boom lift to add conduit at the construction site[,]" a power plant owned by Kentucky Utilities in Ghent, Kentucky. (*Id.* at ¶¶ 11-12). At the time of the incident, Commins' co-worker "was fabricating conduit for the job in another part of the worksite." (*Id.* at ¶ 12). According to Plaintiffs, Commins, "using the boom lift in a manner that was intended[,] . . . backed into an I-beam that was located near the top of a metal frame structure." (*Id.* at ¶ 13). Because Commins was working in a basket attached to the end of the boom lift, "[t]he I-beam pressed against Mr. Commins' upper back and forced him on top of and into the control panel that he was using to operate the lift." (*Id.*). Plaintiffs allege that Commins' co-worker returned to the job area, found Commins' pinned between the I-beam and control panel, used the controls to lower the basket containing Commins to the ground, and called the safety department. (*Id.* at ¶¶ 14-15). When EMS arrived around 1:23 am, Commins was unresponsive and without a pulse; he was declared dead shortly thereafter. (*Id.* at ¶ 15).

Defendants Genie and NES agree that Commins extended the boom lift 20-30 feet into the air into a steel I-beam and died as a result of the tragic accident. But Defendants contest that Commins was not certified by his employer, KBR Construction, to operate the boom lift, and that he violated the warnings and instructions of Genie and KBR by extending the platform of the boom lift without watching where the platform was telescoping and without having a co-worker

---

1 Defendants identify the specific piece of equipment as an "S-85 Aerial Work Platform (AWP)," manufactured by Genie and sold to NES Equipment Services Corporation in 2010.

present to monitor the operation of the boom lift. (DN 86, at p. 2; DN 87, at p. 2).

In September of 2016, Plaintiff Samantha D. (Rowell) Commins initiated this action on behalf of Commins' estate, alleging claims of strict liability, negligence, and gross negligence against both Genie and NES. (DN 1, at ¶¶ 30-54). Plaintiffs' Complaint specifically alleges that the boom lift (1) had inadequate warnings to protect Commins' safety; (2) did not have a protective guard to shield the lift operator that would have prevented Commins' death; and (3) lacked working lights and a working emergency horn. (*Id.* at ¶ 18). It is Plaintiffs' position that Defendants knew of these deficiencies and did not remedy them, which caused or contributed to Commins' death. (*Id.*). Plaintiffs seek punitive damages for the Defendants' gross negligence and willful conduct. (*Id.* at ¶¶ 52, 59, 61, 69, 76, 78).

On September 29, 2017, Plaintiffs served their first discovery requests on Defendants. (DN 84, at p. 2). According to Plaintiffs, the discovery process with NES has been contentious from the outset. Plaintiffs state that, to date, NES has only produced a total of thirteen documents (exclusive of photographs). It appears that the parties communicated via e-mail and telephone on multiple occasions throughout January and February of 2018 in an attempt to resolve Plaintiffs' concerns as to NES's inadequate production. Specifically, Plaintiffs e-mailed NES on January 9, 2018, in advance of a meet-and-confer call to outline the perceived deficiencies in NES's discovery responses, including its written responses, document production, and interrogatory responses. (DN 87-1).

On January 29, 2018, NES e-mailed Plaintiffs its "Second Supplemental Responses to Request for Production of Documents[,]" indicating it had performed additional searches of electronically stored information ("ESI") utilizing the search terms: "Genie, S-85, S85, overhead obstruction, KBR, and speed switch[,"] as requested by Plaintiffs. (DN 84-6). NES's e-mail

further indicated it was performing continuing ESI searches utilizing claimant's name and searches for information responsive to Plaintiffs' recently served Interrogatories. (DN 84-6). NES clarified it has people in multiple departments searching for responsive documents dating back to January 1, 2010, the year that NES purchased the subject Genie S-85, and that it will supplement its responses as it locates additional documents. (*Id.*). Plaintiffs responded and objected to NES's "Second Supplemental Responses" by e-mail on February 13, 2018. (DN 87-4). Plaintiffs expressed their dissatisfaction that NES had failed to identify "the custodians that are being searched and any other custodians with potentially responsive documents" and requested that NES apply a list of seventeen additional search terms, including term connectors, to the custodians. (*Id.* at pp. 1-2).

Because these efforts to resolve the discovery disputes without Court intervention have been "fruitless[,]" Plaintiffs filed the instant Motion to Compel. (DN 84). Plaintiffs seek the Court order NES to disclose potential document custodians, agree to reasonable search terms, conduct searches on the electronic files of its potential document custodians, and then present a Rule 30(b)(6) witness so that they can test whether NES only has thirteen documents responsive to the 25 different categories of documents listed in her requests for document production. (*Id.* at p. 2).

As for the discovery process between Plaintiffs and Genie, it appears that efforts have been more successful thus far. Plaintiffs' Motion to Compel only highlights one discrete dispute with Genie, involving a single request for production that the parties have been unable to resolve. (DN 84, at pp. 7-8).

## Analysis

Trial courts have wide discretion in dealing with discovery matters. *See S.S. v. E. Ky. Univ.*, 532 F.3d 445, 451 (6th Cir. 2008); *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981). The "scope of discovery" encompasses "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Relevance is to be construed broadly to include "any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L.Ed.2d 253 (1978) (citation omitted). In analyzing proportionality, the Court must consider the need for the information sought based upon "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Federal Rule of Civil Procedure 37 allows a party to move for an order compelling disclosure or discovery when "a party fails to answer an interrogatory submitted under Rule 33" or "fails to produce documents . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(iii), (iv). Under this Rule, an "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). The party seeking discovery bears the burden of proving that a discovery response is inadequate. *Equal Rights Center v. Post Props, Inc.*, 246 F.R.D. 29, 32 (D.D.C. 2007).

A. Plaintiffs' Discovery Issues with NES

1. Custodians and Search Terms

As an initial matter, Plaintiffs seek that the Court order NES to "identify by letter all potential custodians with potentially responsive documents, including those involved with [the International Powered Access Federation] or any boom lift safety efforts[.]" (DN 84, at p. 6). Plaintiffs additionally feel NES should be required to meet with them "regarding the custodians whose records will be searched[.]" (*Id.*). NES did not respond to this particular request. (*See* DN 87; DN 90, at p. 6).

Relatedly, Plaintiffs seek that the Court order NES to "apply the search terms proposed by Plaintiffs."[2] (DN 84, at p. 6). NES responds that it continues to search for relevant information and documents based on the search terms it listed in its January 29, 2018 correspondence ("Genie, S-85, S85, overhead obstruction, KBR, speed switch, and Samuel Commins") and will continue to supplement its production when responsive documents are discovered. (DN 87, at pp. 3-4). But NES objects to the "30 additional search terms" and the "complex 'connectors'" that Plaintiffs now request be applied to ESI searching because this is "unreasonable, overly broad, overly burdensome, not proportional to the needs of the case, and unlikely to yield any additional documents responsive to Plaintiff's requests." (*Id.* at p. 4). NES argues that although these search requests provide "no scope of the issues" or "time frame involved in this litigation" it continues to search for relevant information based on the original search terms it identified and will continue to supplement its disclosures as relevant information and documents are discovered. (*Id.*). In reply, Plaintiffs assert that NES did not meet its burden in showing that its requested search terms are

---

2 Plaintiffs' list of proposed search terms reads: "secondary guarding;" "secondary protection;" "sanctuary rails;" "operator protective alarm;" "operative protective structure!;" "OPS;" "OPA;" "entrapment;" "overhead w/10 obstruction!;" "SIOPS;" "SkyGuard;" "Lift Guard;" "contact alarm;" "(crush! OR trapping) w/10 (overheard obstacle! OR incident! OR accident! OR injur! OR beam;" "('speed limit' or 'limit switch' 'speed switch') w/25! (malfunction! Or calibrat! OR wrong OR 'too fast' OR broken OR set);" and "Commins." (DN 84-7, at p. 3).

unreasonable. (DN 90, at pp. 4-5). According to Plaintiffs, NES has not explained what is wrong with these search terms, how these terms would produce too many hits, or how the search connectors are too burdensome in relation to the subject matter of this litigation. (*Id.*).

It is clear that the parties conferred and submitted a Rule 26(f) report and proposed scheduling order (DN 51; DN 53), but the report did not address the issue of electronically stored information. Subsection (f)(3)(C) of Rule 26 explains that the discovery plan should include the parties' views and proposals on: "issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced[.]" Fed. R. Civ. P. 26(f)(3)(C). When this sort of two-way planning does not occur upfront, and questions about the adequacy of document production subsequently arise, "common sense dictates that the party conducting the search must share information regarding the universe of potentially relevant documents being preserved, and those that no longer exist, as well as the search terms used in collecting relevant documents and the identities of the custodians from whom the documents were retrieved." *Burd v. Ford Motor Co.*, No. 3:13-cv-209-76, 2015 WL 4137915, at *8 (S.D.W.V. July 8, 2015). The district court should generally not play a role in dictating the design of a search, choosing search tools, selecting search terms, or designating custodians, unless a responding party's choice "is manifestly unreasonable or the requesting party demonstrates that the resulting production is deficient." *Mortgage Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*, 15 CV 0293, 2017 WL 2305398, at *2 (S.D.N.Y May 18, 2017).

Here, it appears that NES did not reveal to Plaintiffs during the formation of their Rule 26 litigation plan which individuals it planned to designate as the custodians most-likely to possess responsive information to the Plaintiffs' ESI requests. *See* Fed. R. Civ. P. 26(f)(3)(C). It further does not appear that the parties exchanged proposals on the search terms that NES would run

during ESI searching at the initial Rule 26 planning stage. This lack of planning has led to the present disputes over the undisclosed custodians and Plaintiffs' list of new search terms.

After weighing these considerations, the Court finds it appropriate to grant Plaintiffs' request that NES be compelled to produce a list of custodians it has been utilizing to produce documents thus far in discovery. NES shall also identify any additional custodians likely to possess responsive information relevant to the claims in the litigation, including those involved with the International Powered Access Federation or any boom lift safety efforts. As for the list of additional search terms that Plaintiffs have proffered, the Court finds it is beyond its purview to determine whether each term is relevant.[3] Because the parties failed in their Rule 26 obligations with respect to ESI and have not made specific arguments regarding the relevance and reasonableness of the individual search terms that Plaintiff has now proposed, the Court finds it necessary to order an additional meet and confer period for the parties to develop a further plan for ESI discovery and to attempt to reach an agreement as to the disputed search terms. Plaintiff's request that NES be ordered to apply the new list of search terms is, therefore, denied without prejudice, and the parties are ordered to meet and confer within 20 days entry of this Order to work on an agreement as to ESI discovery.[4]

---

3 Because the Court does not know how many custodians are at issue and because the parties have not made specific arguments regarding the relevance of each individual proposed search term, the Court finds it would be extremely difficult at this time to make an informed decision on the issue of whether Plaintiff's proposed search term list is unreasonable. *See Natural Alternatives International, Inc. v. Hi-Tech Pharmaceuticals, Inc.*, No. 16-cv-02343-H-AGS, 2017 WL 3668738, at *2 (S.D. Cal May 8, 2017) (District courts generally consider contested requests for additional search terms per custodian upon showing a distinct need "based on the size, complexity, and issues of the specific case."); *John Crane Grp. Corp. v. Energy Devices of Tex., Inc.*, No. 6:14-CV-178, 2015 WL 11089486, at *7 (E.D. Tex. Feb. 2, 2015).

4 The Court is cognizant that the Scheduling Order deadline for completion of discovery is August 1, 2018. (DN 53, at p. 2). Because of the setbacks due to the present Motion to Compel and the Court's determination that an additional meet and confer period for the parties is necessary to assist with discovery of ESI, the Court understands that future amendments to the discovery deadline will likely be necessary.

## 2. Interrogatories

Plaintiffs also want the Court to order NES to "supplement its interrogatory responses." (DN 84, at p. 6). Although Plaintiffs do not identify any specific interrogatories in their Motion to Compel, their letter to NES on February 13, 2018, attached as Exhibit 7 to their Motion to Compel, indicates they believe NES's responses to Interrogatory Nos. 2, 3, 4, and 6 are "glaringly deficient." (DN 84-7, at p. 3).

### a. Interrogatory No. 2

This Interrogatory reads: "[p]lease identify each person or persons, including their last known address, phone number, and employer, who were or are responsible for ensuring that the equipment that NES leases or rents is safe, including but not limited to, whether such equipment includes all available safety equipment necessary to ensure the safety of operators." (DN 84-8, at pp. 2-3). NES responded by stating:

> Objection. This Interrogatory is overly broad, vague, ambiguous, seeks information that is irrelevant, and is not proportional to the needs of this case. The Interrogatory is not limited in time from 2010 when the subject Genie S-85 was purchased to the date of the subject incident on September 25, 2015, and is not limited in scope to the specific Genie telescopic boom lift (Unit #N63021, Model S-85, Serial S8510-8304) which is subject of this litigation, or Genie S-85 telescopic boom lifts in general. This Interrogatory is vague as to the use of the term 'safe.' Further, this Interrogatory calls for a legal conclusion. The subject Genie S-85 was in the custody, care, and control of KBR for approximately 1 year prior to decedent's death. Genie is the manufacturer of the subject S-85 boom lift.

(*Id.* at p. 3).

NES presently reinforces that its objection to Interrogatory No. 2 was appropriate because Plaintiffs both failed to limit the time frame for the information they seek and to limit the scope of the type of equipment for which the person was responsible, which would arguably require it to produce the information for "every NES employee for all time." (DN 87, at p. 5). Further, because "reasonable care" is the standard applicable to NES in this case, rather than "safety," as used in the

Interrogatory, NES claims Plaintiffs should be required to narrow the Interrogatory's language. (*Id.* at pp. 5-6).

Plaintiffs claim these objections are merely boilerplate.[5] As for NES's concern about the relevant time period, Plaintiffs explain that the Interrogatories were expected to cover "ten years before the accident until the month the suit was filed, extending back to September 2005" because similar crushing accidents were occurring frequently then. (DN 90, at p. 3 (citing Buland Reply Decl. Ex. H (Instruction 17); Ex. I (Instruction 18)). But Plaintiffs also feel that NES improperly objected based on lack of time frame limitations because it appears NES only objected "to justify its refusal to fully search for and produce documents sought." (*Id.* at p. 2). As for NES's concern about Plaintiffs' use of the term "safe," Plaintiffs point out that NES touts itself as "Safety First" and as promoting a "Culture of Safety," meaning NES clearly understands the meaning of the word "safe." (DN 90, at p. 6).

After reviewing Plaintiffs' first set of Interrogatories, it is clear that it intended for the relevant time period for Interrogatory No. 2 to be "September 1, 2005 to September 1, 2016." (DN 90-3, at p. 3). Even so, the Court agrees with NES that this time period is overly broad in proportion to the claims in this case. NES first purchased the S-85 at issue at some point in 2010, and the incident that is the subject of the lawsuit occurred on September 25, 2015. It is therefore unnecessary to require NES to identify the names of each person responsible for ensuring the equipment that NES leases or rents is safe for five years before the piece of equipment at issue in this litigation was acquired by NES. The Court finds January 1, 2010 – September 1, 2016, to be a

---

5 Generally, without further development, the Court cannot credit boilerplate objections that interrogatories are "vague," "ambiguous," and "overly broad." This Court has held that unexplained and unsupported objections of this nature are insufficient and improper. *Gluc v. Prudential Life Ins. Co. of Am.*, 309 F.R.D. 406, 415 (W.D. Ky. 2015) (citing *In re Heparin Products Liability Litigation*, 273 F.R.D. 399, 410-11 (N.D. Ohio 2011) ("The mere statement by a party that an interrogatory or request for production is overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection."); *Duran v. Cisco Sys., Inc.,* 258 F.R.D. 375, 379-80 (C.D. Cal. 2009)).

reasonable time period for this Interrogatory. NES's suggestion that Interrogatory No. 2 be limited based on "the type of equipment" that the person or persons were responsible for is also well-taken. The Court finds that limiting this Interrogatory to persons responsible for ensuring that the Genie S-85 boom lift from this case, Genie telescopic boom lifts rented by NES, and any other boom lifts rented by NES were safe. NES's objection to Plaintiffs' use of the term "safe" as vague also has some merit. Because the Court finds that "safe" can have different meanings in different contexts, Plaintiffs should be required to provide an objective definition of "safe" as it is to be applied in Interrogatory No. 2.

In summary, Plaintiffs shall provide an objective definition of "safe" as it is to be applied in Interrogatory No. 2. Once that definition is provided, NES is required to supplement its answer within 30 days to provide the names and contact information for those individuals at NES who were or are responsible for ensuring that the Genie S-85 boom lift in this case, all Genie boom lifts rented by NES, and any other boom lifts rented by NES were safe, including but not limited to, whether such boom lifts include all available safety equipment necessary to ensure the safety of operators from January 1, 2010, to September 1, 2016.

### b. Interrogatory Nos. 3 and 4

The next Interrogatory at issue, No. 3, reads: "[p]lease identify all incidents of which NES is aware that involves a boom lift resulting from an overhead obstacle or obstruction." (DN 90-3, at p. 5). Interrogatory No. 4 likewise requests identification of "all incidents of which NES is aware that involve a boom lift resulting from an improperly functioning speed reduction limit switch." (*Id.*). For both interrogatories, Plaintiff requested NES provide the following information for each incident if applicable: "(a) time, date, and location of incident; (b) nature of the incident and injury or death; (c) identity of victim; and (d) if litigation resulted, the jurisdiction and caption of the case

and name, location, and phone number of the attorney for the victim." (*Id.*).

NES once again responded by stating:

Objection. This Interrogatory is overly broad, vague, ambiguous, seeks information that is irrelevant, seeks information outside of NES's knowledge, and is not proportional to the needs of this case. The Interrogatory is not limited in time from 2010 when the subject Genie S-85 was purchased to the date of the subject incident on September 25, 2015, and is not limited in scope to the specific Genie telescopic boom lift (Unit #N63021, Model S-85, Serial #S8510-8304) which is subject of this litigation, or such incidents involving NES or Genie S-85 telescopic boom lifts in general. NES further objects to this Interrogatory to the extent Plaintiffs seeks information that constitutes work product prepared in anticipation of litigation and/or is protected by the attorney/client privilege. Any incident prior to 2010 when the subject Genie S-85 was purchased or after the date of the subject incident on September 25, 2015, is irrelevant and/or constitutes a subsequent remedial measure. Without waiving the foregoing Objections, at this time, NES is not aware of any incidents involving a Genie S-85 telescopic boom lift and an overhead obstacle or obstruction.[6]

(DN 84-8, at pp. 3-4).

Now, NES reinforces that Plaintiffs seek broad ranging information for an "infinite amount of time" when NES has plainly indicated that it is "unaware of any incident resulting from an overhead obstacle or obstruction or resulting from an improperly functioning speed reduction limit switch involving a Genie S-85 boom lift from the time it acquired the lift at issue until the time of the subject incident." (DN 87, at p. 7). In reply, Plaintiffs assert that information involving all types of boom lifts, not just those manufactured by Genie, and dating back to 2005 is highly relevant and important to this case. (DN 90, at pp. 7-8).

Courts routinely find that evidence concerning prior similar incidents is discoverable "if it is relevant to any matter raised in the litigation." *See Stansberry v. Belk, Inc.*, No. 1:14-cv-145-CLC-SKL, 2015 WL 521114, at *3 (E.D. Tenn. Feb. 9, 2015) (quoting *Donovan v. Wal-Mart Stores, Inc.*, No. 4:11-cv-00885-JMC, 2012 WL 3025877, at *2 (D.S.C. July 24, 2012)

---

6 NES's answer to Interrogatory No. 4 is identical to that of Interrogatory No. 3 except the last sentence reads: "Without waiving the foregoing Objections, at this time, NES is not aware of an incident in which it was alleged that the speed limit switches were functioning improperly on a genie S-85." (DN 84-8, at p. 6).

(collecting cases)). "For discovery purposes, a court need only find that the circumstances surrounding the other incidents or products are 'similar enough' that discovery concerning those incidents is reasonably calculated to lead to the uncovering of substantially similar occurrences." *Ree v. Royal Caribbean Cruises Ltd.*, 315 F.R.D. 682, 686 (S.D. Fl. 2016) (citations omitted). To prevent undue burden, however, a court may place reasonable limitations on the discovery of prior similar incidents. *See Stansberry*, 2015 WL 521114, at *3; *Franklin v. Nat'l Gen. Assurance Co.*, No. 2:13-CV-103-WKW-SRW, 2014 WL 12738265, at *1 (M.D. Ala. Apr. 28, 2014).

In this case, prior incidents "involv[ing] a boom lift resulting from an overhead obstacle or obstruction" or "involv[ing] a boom lift resulting from an improperly functioning speed reduction limit switch" are clearly relevant to the claims Plaintiffs allege. The Court, however, finds it appropriate to ascribe reasonable limitations to the disclosure of such "similar incidents." The first of these limitations is the time frame for which Plaintiffs seek disclosure of similar incidents. NES feels that Plaintiffs are requesting "all incidents, involving all boom lifts, for an infinite amount of time." (DN 87, at p. 7). But, once again, Plaintiffs clearly indicated in the "Definitions and Instructions" portion of their "First Set of Interrogatories to NES" that "unless otherwise specified, the time period for these Interrogatories shall be from September 1, 2005 to September 1, 2016." (DN 90-3, at p. 3). NES states that it tailored its answers to a time period beginning with 2010 when it acquired the subject boom lift until the date of the incident in 2015.

The Court agrees with NES that Interrogatory Nos. 3 and 4 should be tailored to a more reasonable time period, and the time period identified by NES qualifies as such. *See Stansberry*, 2015 WL 521114, at *3 (stating that when a plaintiff fails to provide any basis for unlimited temporal requirements, their requests should be tailored to "a more reasonable time period."). Because NES first purchased the S-85 at issue at some point in 2010, and the incident that is the

subject of the lawsuit occurred on September 25, 2015, the Court finds that January 1, 2010 – September 1, 2016, to be a reasonable time period for the discovery of similar incidents.

Additionally, while Plaintiffs may be correct that the boom lift industry has never distinguished between the type of lift or model when warning boom lift operators, this fact does not necessarily mean that NES has discoverable information regarding boom lift incidents or speed reduction limit switch incidents beyond those involving the Genie S-85 involved in Mr. Commins's death, other Genie S-85 boom lifts that NES rents, or any other boom lifts that NES rents. Because of this, the Court agrees with NES that Plaintiffs' requests in Interrogatory Nos. 3 and 4 are overly broad in this respect and should be limited to similar incidents involving Genie S-85 boom lifts or other models of boom lifts that NES rents.[7]

As such, the Court will require NES to supplement its responses to Interrogatory Nos. 3 and 4, to identify all incidents of which NES is aware involving the Genie S-85 at issue in this case, other Genie S-85 boom lifts that NES rented, or other models of boom lifts that NES rented from January 1, 2010 – September 1, 2016. In addition to identifying the incidents, NES will be required to disclose for each incident: (a) the time, date, and location; (b) the nature of the incident and injury or death; (c) the identity of the victim; and (d) if litigation resulted, the jurisdiction and caption of the case, and name, location, and phone number of the attorney for the victim.

### c. Interrogatory No. 6

This Interrogatory reads: "Please identify each person or persons, including their last known address, phone number, and employer, who was or were actively involved in your determination whether to retrofit aerial lifts, including the Genie S-85 boom lift at issue in this case, with an available Operator Protective Structure, Operator Protective Alarm, Contact Alarm,

---

7 Prior similar incidents involving boom lifts or similar equipment not rented by NES go beyond what is proportional in this case and could constitute an undue burden on NES. The language "All incidents of which NES is aware" is simply too broad.

or any other system intended to protect the operator against collision with or entrapment from an overhead obstruction for each year beginning 2010 through the present." (DN 84-8, at p. 6). NES responded by stating:

> Objection. This interrogatory is overly broad, vague, ambiguous, seeks information that is irrelevant, and is not proportional to the needs of this case. This Interrogatory erroneously assumes facts not the in the record. NES is not the manufacturer of the subject Genie S85. The Lease Agreement with KBR outlines the equipment which KBR orders. The Interrogatory is not limited in time from 2010 when the subject Genie S-85 was purchased to the date of the subject incident on September 25, 2015, and not limited in scope to the specific Genie telescopic boom lift (Unit #N63021, Model S-85, Serial #S8510-8304) which is subject of this litigation, or Genie S-85 telescopic boom lifts in general. Without waiving the foregoing Objections, as a general rule, NES did not retrofit its boom lifts with Operator Protective Structures, Operator Protective Alarms, or Contact Alarms unless instructed to do so by the lift manufacturer. No ANSI or OSHA standards or regulations required retrofitting of Genie S-85 boom lifts with Operator Protective Structures, Operator Protective Alarms, or Contact Alarms. Genie did not require or instruct NES to retrofit the subject Genie S-85 with an Operator Protective Structure, Operator Protective Alarm, Contact Alarm, or any other system. KBR did not request NES to install or retrofit the subject Genie S-85 with an Operator Protective Structure, Operator Protective Alarm, Contact Alarm, or any other system.

(*Id.* at pp. 6-7).

NES presently stresses that its answer to Interrogatory No. 6 is "straight forward and complete" – because there were no OSHA or ANSI standards, and KBR did not request any of the identified systems, NES did not retrofit the boom lift. (DN 87, at p. 11). Mere dissatisfaction with a party's answer, NES explains, does not amount to a refusal or failure to comply with a discovery request. (*Id.*). NES, as a result, requests the Interrogatory be limited in time and scope to "the Genie S-85 involved in this incident and to the time from when NES acquired the Genie S-85 in 2010 until the date of the subject incident in September 2015. (*Id.*).

In reply, Plaintiff points out that NES has dodged the question in Interrogatory No. 6 by stating "<u>why</u> NES didn't believe it needed to add the safety equipment and didn't do so, but not

<u>who</u> at NES was responsible for making such a decision." (DN 90, at p. 8). If NES never even considered putting the safety devices on its lifts, meaning no one was responsible for its consideration, Plaintiffs want NES to make such statement in its answer.

The Court agrees with Plaintiffs that although NES has provided information concerning why it did not add safety devices to the Genie S-85 at issue in this case, its answer avoids the question of who was "actively involved" in making such a determination. Because the names and contact information for these decision-makers could lead to other matter that could bear on Plaintiffs' claims, the Court orders NES to supplement its answer to Interrogatory No. 6. The Court again finds it appropriate, based on NES's persuasive objections, to limit the time frame for this Interrogatory from January 1, 2010 to August 1, 2016, and limit the identified persons to those involved in determining whether to retrofit the Genie S-85 in this case or other Genie S-85 boom lifts that NES rents. In other words, NES's supplemental response should identify the person or persons, including their last known address, phone number, and employer involved in making the determination of whether to retrofit the Genie S-85 in this case or other Genie S-85 boom lifts that NES rents for the identified safety devices. Alternatively, if NES never considered retrofitting its lifts with safety devices, meaning that no one was responsible for such a consideration, NES should make such a statement in its response.

### 3. Rule 30(b)(6) Witness

Because NES has only produced a limited number of documents in discovery, Plaintiffs feel they should be authorized to take "an early Rule 30(b)(6) deposition" to get basic answers about NES's records, custodians, and document retention without prejudicing its ability to notice a later a Rule 30(b)(6) deposition on substantive topics. (DN 84, at p. 6). NES responds that this request is premature and procedurally improper because Plaintiffs have yet to serve a Rule

30(b)(6) notice or subpoena describing the matters for examination. (DN 87, at p. 9).

When discovery sought is collateral to the relevant issues (*i.e.*, discovery on discovery), the party seeking the discovery must provide an "adequate factual basis to justify the discovery and the Court must closely scrutinize the request "in light of the danger of extending the already costly and time-consuming discovery process *ad infinitum*." *Winfield v. City of New York*, 15-cv-05236 (LTS) (KHP), 2018 WL 840085, at *3 (S.D.N.Y. Feb. 12, 2018) (quoting *Mortgage Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*, No. 15-cv-0293 (LTS) (JCF), 2016 WL 3906712, at *7 (S.D.N.Y. July 14, 2016) (additional citation omitted)). A number of courts look upon collateral discovery "with skepticism" or "strongly discourage" it. *Fish v. Air & Liquid Systems Corp.*, No.: GLR-16-496, 2017 WL 697663, at *17 (D. Md. Feb. 21, 2017) (citing *Freedman v. Weatherford Int'l, Ltd.*, No. 12 Civ. 2121(LAK)(JCF), 2014 WL 4547039, at *2 (S.D.N.Y. Sept. 12, 2014)); *see also Catlin v. Wal-Mart Stores, Inc.*, No. 0:15-cv-00004-DWF-KMM, 2016 WL 7974070, at *1-2 (D. Minn. Sept. 22, 2016) (noting that there is "scant controlling precedent in this area," but the relevant case law gives some guidance into circumstances where collateral discovery may be warranted).

As NES points out, Plaintiffs have not formally noticed this Rule 30(b)(6) deposition that they seek and, as a result, have not provided NES with a list of potential deposition topics. Instead, NES has merely identified in its motion to compel that it seeks answers to "basic questions about NES records, custodians, and document retention." *See Martin v. Allstate Ins. Co.*, 292 F.R.D. 361, 364 (N.D. Tex. Apr. 4, 2013) (denying Rule 30(b)(6) deposition where topics sought discovery on discovery, including document retention polices, efforts in responding to discovery, and efforts to preserve documents, because such topics were "overbroad and irrelevant."). The Court therefore concludes that permitting the collateral discovery sought by Plaintiffs, in the form of a Rule

30(b)(6) deposition, is neither relevant to a claim or defense in the litigation nor proportional to the needs of the case at this time. Fed. R. Civ. P. 26(b)(1). Because the Court has previously determined it is necessary for Plaintiffs and NES to meet and confer in the next 20 days to reach an agreement as to ESI discovery going forward, including custodians and search terms, it would be inappropriate at this juncture to grant Plaintiffs' request for a Rule 30(b)(6) deposition.[8]

### 4. Requests for Production of Documents

Lastly, Plaintiffs allege that NES has withheld documents responsive to Requests for Production of Documents Nos. 17, 18, 19, and 25. (DN 84, at p. 7). Plaintiffs state that "[s]urely documents responsive to these requests exist[,]" and the Court should order NES to look for and produce these documents. (*Id.*). The documents at issue include:

> NES corporate policies, practices, procedures relating to safety (other than the safety checklist used when equipment is rented) (RFP 17);
>
> NES corporate policies, practices, procedures, manuals, and instructions relating to accident investigation involving NES equipment (RFP 18);
>
> NES training materials for employees responsible for leasing and maintaining equipment and boom lifts (RFP 19); and
>
> NES's document retention policy (RFP 25).

(*Id.*).

NES explains that it served complete objections and responses to these requests after it "performed a good faith search for responsive materials." (DN 87, at pp. 9-10). NES states that even though Plaintiffs are dissatisfied with its responses, its responses and objections comply with the Federal Rules and it is not withholding any documents. (*Id.* at p. 10). In reply, Plaintiffs contest that NES's response is not credible because it is essentially stating it has "no corporate policies

---

8 Nothing in this Order prevents Plaintiffs from later properly noticing a Rule 30(b)(6) deposition seeking collateral discovery if some time after the required meet and confer period Plaintiffs still feel that NES is withholding or refusing to produce relevant documents and information.

about safety, accident investigations, or document retention." (DN 90, at pp. 9-10). Plaintiffs, therefore, seek NES be compelled to conduct a diligent search of its files for responsive documents and to produce them. (*Id.* at p. 10).

For document production requests, responding parties must produce documents which are in their possession, custody, or control. Fed. R. Civ. P. 34(a)(1). Rule 34 requires a party "to produce documents that already exist" but does not require a party "to create a document in response to a request for production." *Harris v. Advance Am Cash Advance*, 288 F.R.D. 170, 174 (S.D. Ohio 2012) (citing *In re Porsche Cars, N.A., Inc.*, No. 2:11-md-2233, 2012 WL 4361430, at *9 (S.D. Ohio Sept. 25, 2012)); *see also Cartel Asset Management v. Ocwen Fin. Corp.*, No. 01-cv-1644, 2010 WL 502721, at *14 (D. Colo. Feb. 8, 2010) ("It is well-settled that a responding party's obligations under Rule 34 do not extend to non-existent materials.").

While the Court recognizes that the information Plaintiffs seek would clearly be relevant to Plaintiffs' claims in the case, NES has no obligation to create documents that do not exist. NES, however, has not indicated that such documents do not exist but rather that it has performed a good faith search for responsive materials to Requests for Production Nos. 17, 18, 19, and 25, and it will continue to supplement its discovery responses as it performs its ongoing obligations under Rule 26.[9] Plaintiffs admit that NES has not indicated that it would not produce the requested documents or that such documents do not exist but that NES has simply not produced any such documents.

Once again, as the Court has ordered the parties to meet and confer regarding an ESI discovery plan for going forward, and documents responsive to these requests could be recovered through additional searches, a ruling compelling production of such documents is premature. NES

---

9 Because neither party included NES's "Objections and Responses to Plaintiffs' Requests for Production of Documents" with their briefs on this issue, the Court is not sure of the exact responses NES tendered to Plaintiffs' Requests for Production of Documents. NES clarifies in its response brief that it "objected that the Requests were overly broad" but that it "did not state that is it withholding any documents pursuant to an Objection at this time." (DN 87, at p. 10).

should continue to supplement its responses in compliance with Rule 26 during and after the parties meet and confer period and make actual production of all materials responsive to Requests for Production Nos. 17, 18, 19, and 25 as they are located.

## B. Plaintiffs' Discovery Issues with Genie

Plaintiffs' only dispute with Genie involves their Request for Production of Documents No. 20, which seeks:

Documents sufficient to show the following:

(a) The overall cost of designing and developing the Operator Protective Structure;

(b) The overall cost of designing and developing the Operator Protective Alarm;

(c) The unit cost of producing the Operator Protective Structure;

(d) The unit cost of producing the Operator Protective Alarm;

(e) The retail price of the Operator Protective Structure;

(f) The retail price of the Operator Protective Alarm;

(g) How much revenue and profit Genie has made from sales of the Operator Protective Structure; and

(h) How much revenue and profit Genie has made from sales of the Operator Protective Alarm.

(DN 86, at pp. 2-3).

Genie admittedly produced no documents pursuant to this Request and stated: "Objection. Genie objects to this Request on the grounds that it is overly broad and seeks information that is irrelevant, confidential, commercially sensitive, and not proportional to the needs of the case." (*Id.*, at p. 3). Now, in their motion to compel, Plaintiffs argue that the information sought in Request for Production No. 20 is relevant not only to the economic feasibility of safer alternative designs but also to her claims of punitive damages. (DN 84, at pp. 8-9). Plaintiffs specify that the

requested information is responsive to both Plaintiffs' liability claims and Plaintiffs' entitlement to punitive damages under Kentucky law. (*Id.* at pp. 9-10).

Genie, in response, argues that Plaintiffs' request should be denied for two reasons. First, Genies asserts that much of the requested information does not exist and it cannot produce what it does not have. (DN 86, at p. 3). Plaintiffs reply that this argument is not credible. (DN 88, at pp. 7-8). Specifically, because Genie doesn't deny that it possesses information about how much each unit costs to produce (subparts (c) and (d)), Plaintiffs believe it should also be able to produce information sufficient to show its profits, as requested in subparts (g) and (h). (*Id.*). Plaintiffs also explain that they intentionally did not seek "all documents" relating to cost, revenue, or profit, and instead sought documents "sufficient to show . . ." their Requests, which should allow Genie to respond easily. (*Id.* at p. 8).

As the Court discussed in the preceding section, Genie's obligations under Rules 26 and 34 do not extend to non-existent materials. *See Harris*, 288 F.R.D. at 174; *In re Porsche Cars, N.A., Inc.*, 2012 WL 4361430, at *9 ("If Defendants indicate that, after a reasonable inquiry, no documents exist that are responsive to the request, then their obligations under the Federal Rules are satisfied and the Court can compel nothing more."). "A party is not required 'to prepare, or cause to be prepared,' new documents solely for their production." *Alexander v. Fed. Bureau of Investigation*, 194 F.R.D. 305, 310 (D.D.C. 2000). Although Genie states that it "does not have documents or information responsive to much of Request for Production of Documents No. 20, including 20(a), 20(b), 20(g) and 20(h)[,]" it does not specify that it conducted a reasonable inquiry. (DN 86, at p. 5). The Court therefore orders Genie to perform a "reasonable inquiry," if it has not done so, or provide a supplemental response indicating that it has conducted a reasonable inquiry but has not uncovered any documents responsive to subparts (a), (b), (g), and (h) of

Request for Production No. 20. Genie should also maintain awareness of its ongoing obligations under Rule 26 to supplement its responses if additional responsive information is discovered.

As for subparts (c)-(f) of Request for Production No. 20, Genie asserts that Plaintiff has not met her burden in proving the information is relevant and proportional to the needs of the case based on either Plaintiffs' liability or punitive damages claims. Regarding liability, Genie asserts the discovery of OPS/OPA financial information is not relevant because Genie does not contest that OPA and OPS were "economically feasible designs" but instead asserts that NES simply chose not to purchase these optional features for the boom lift at issue. Plaintiffs, in reply, assert that Genie's concession that the OPA and OPS were feasible designs "won't be the only issue at trial" because Genie will "undoubtedly . . . try to justify its choice to charge customers for them instead of including them as standard equipment (as other large boom manufacturers now do)." (DN 88, at pp. 2-3) (emphasis in original).

Genie's argument is not persuasive. Even though Genie concedes that OPA and OPS are feasible designs, the unit cost of producing each safety feature (subparts (c) and (d)) and the retail price of each safety feature (subparts (e) and (f)) is relevant to the cost and availability of alternative, safer designs. These requests are also proportional to the needs of the case, as the benefit to Plaintiffs outweighs the burden on Genie to produce these four discrete and specific documents/pieces of information.

Regarding Plaintiffs' claims of punitive damages, Genie feels it would be senseless to produce the requested financial information that is only relevant to Plaintiffs' claim for punitive damages claim, when it "intends to file a motion for partial summary judgment" on this "baseless" claim. (DN 86, at p. 7). But bifurcation of discovery to permit Genie to file a motion for summary judgment on the punitive damages issue before producing financial information, Plaintiffs argue,

is needless and inappropriate because it would delay trial in the case and because Plaintiffs "already have enough evidence for a jury to award punitive damages against Genie." (*Id.* at pp. 5-6). Again, the Court is not convinced by Genie's argument. A party cannot simply avoid its discovery obligations by stating that the opposing party's claims are meritless and that the claims will soon be disposed of on summary judgment. Because the Court has already found that subparts (c)-(f) of Request for Production No. 20 are relevant and proportional to the needs of this case, the Court orders Genie to produce the responsive documents to these subparts within 30 days entry of this Order.

<u>Order</u>

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Compel (DN 84) is **GRANTED IN PART** and **DENIED IN PART** to the extent set forth above.

**IT IS FURTHER ORDERED** that:

- Plaintiffs and NES are required **to meet and confer within 20 days entry of this Order**, wherein (1) NES will provide Plaintiffs with a list of custodians it has been utilizing thus far in discovery and additional custodians likely to possess responsive information relevant to the claims in this litigation; and (2) the parties will attempt to reach an agreement for discovery of ESI moving forward, including the list of search terms proposed by Plaintiffs.

- NES is required to **supplement its responses to Interrogatory Nos. 2, 3, 4, and 6** as outlined above, **within 30 days entry of this Order.**

- Plaintiffs' request for a Rule 30(b)(6) deposition to get answers about NES records, custodians, and document retention is **denied without prejudice**.

- Plaintiffs' request that NES provide documents responsive to Requests for Production Nos. 17, 18, 19, and 25 is **denied**.

**IT IS FURTHER ORDERED** that Genie is required to **supplement its responses** to Requests for Production of Documents No. 20, subparts (c) – (f) **within 30 days entry of this Order.**

**IT IF FURTHER ORDERED** that a telephonic status conference is scheduled with the Court on **August 10, 2018 at 2:00 PM** for the parties to update the Court as to the progress of their meet and confer. The Court will initiate the call.

Copies to:     Counsel of Record